IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERMAINE GREENE,** | ) | |
| Greene, | ) | Civil Action No. 11-91 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| **ARCHIE LONGLEY,** | ) | |
| Respondent. | ) | |

## OPINION AND ORDER[1]

Presently before the Court is Germaine Greene's petition for a writ of habeas corpus [ECF No. 5], which he filed pursuant to 28 U.S.C. § 2241. He challenges a disciplinary action taken when he was incarcerated at the Federal Correctional Institution ("FCI"), Fort Dix, New Jersey, in connection with Incident Report No. 2042304, issued on July 18, 2010. He was charged with Possession of a Hazardous Tool and Assaulting Any Person (Minor), in violation of Codes 108 and 224, respectively. Greene alleges that he was not permitted to present witness statements in his own defense, the evidence relied upon by the Discipline Hearing Officer ("DHO") did not support the charge, and the DHO was not impartial. He also challenges the Bureau of Prisons' (the "BOP's") classification of cell phones as "hazardous tools" and contends, *inter alia*, that the BOP violated the Administrative Procedures Act, 5 U.S.C. § 551, et seq. ("APA") when it instituted the rule that classified cell phones as "hazardous tools." As relief, he seeks an order reversing the decision of the DHO so that he may receive sentencing credits that he claims he is entitled.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

I.

A.	**Relevant Background**

On June 25, 2007, Greene was sentenced in the U.S. District Court for the Central District of California to 78 months of imprisonment, with a five year term of supervised release to follow, for Transportation of a Minor with Intent That the Minor Engage in Prostitution, in violation of 18 U.S.C. § 2423(A). His current projected release date is in October 2011, assuming he receives all good conduct time available.

During the events in question, Greene was incarcerated at FCI Fort Dix. Inmates there are notified that if they are found in possession of electronic communication devises, including a cell phone, they "will be charged with a violation of Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool. (ECF No. 13-3 at 4, 6).[2] At the time that the incident at issue in this case occurred, Code 108 read:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)

See 28 C.F.R. § 541.13, Table 3 (July 2010).[3] Greene claims that he did not receive the FCI Fort Dix memoranda notifying inmates that cellular phones are considered to be hazardous tools. There is no dispute, however, that he was on notice that Code 108 prohibited the possession of any tool likely to be used in an escape or escape attempt. A cell phone falls within that broad definition.

---

[2]   The record citations are to exhibits Respondent submitted to the Court. The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed.2010) provides citation form for court documents filed with the Electronic Case Management system of the federal courts. Rule B7.1.4. Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

[3]   The BOP recently revised Code 108 to provide additional examples of "hazardous tools," including a "portable telephone, pager, or other electronic devise." 28 C.F.R. § 541.3 (effective June 20, 2011).

2

On July 18, 2010, Incident Report Number 2042304 was issued charging Greene with Possession of a Hazardous Tool and Assaulting Any Person, in violation of Codes 108 and 224, respectively. (ECF No. 13-2 at 3-7). Therein, Security Officer C. Cole reported:

> On 7/18/2010, while conducting random shakedowns [cell searches] of the 2nd floor of building 5752, I smelled what appeared to be cigarette smoke coming out of the bathroom on the 2nd floor (by room 234). I walked out of the stall. I looked over top of the stall and observed an inmate texting on a cellular phone. The phone was red in color. I stepped away from the stall and radioed for a compound officer to come to the second floor in [building] 5752 immediately. The inmate stood up in the stall at which time he was given a direct order to remain in the stall. At this time, the inmate opened the stall door at which time, a second direct order was issued. At this time the inmate started in my direction as I was standing in the doorway. At this time the inmate was warned that if he did not stop and made contact with me I would utilize my body alarm. The inmate refused to obey any direct orders. At this time the inmate struck me in the chest in an attempt to move me out of the way. At this time a physical altercation began in which the inmate struck me in my throat in an attempt to get away. The inmate and I continued to struggle in the hallway. After approximately 3 minutes of trying to hold the inmate and wait for responding staff the inmate broke free and took off down the steps. At this time the inmate raced across the first floor. The inmate stopped by the trash can in the leisure room (pool room) briefly before running upstairs and disappearing. The unit was immediately locked down. In the trash can by the leisure room a red in color, Virgin Mobil, cell phone and battery were recovered. A lock down census was performed, at which time, it was discovered the inmate in question was GREEN[E], Germaine 32662-112.

(ECF No. 13-2 at 4).

Lieutenant J. Tucker delivered the Incident Report to Greene on July 19, 2010. He advised Greene of his right to remain silent during the disciplinary process. After the Incident Report was read to him, Greene stated that he understood the charges against him. (ECF No. 13-2 at 6). Greene denied the charges and stated that he was not involved in the incident in question. He said that he was in the laundry room washing his clothes when it occurred. (Id.)

Lt. Tucker investigated the matter further. On July 26, 2010, he obtained a Memorandum from Lieutenant E. Blount, in which Blount wrote:

3

> On July 18, 2010, a body alarm was announced by the East Control in Unit 5752. Upon arrival to the unit, Officer Cole stated an inmate ran and hit him when he caught him on a phone. I asked Officer Cole if he could identify the inmate and he said yes and that the inmate lived in his unit. Upon recalling all inmates to the unit, a search of all inmates was completed. Officer Cole stated he was not quite sure but thought inmate Greene was the suspect due to his size. I told Officer Cole he had to be 100% sure if he was going to write an incident report for assault. Inmate Greene did not have any apparent injuries and was escorted to the Lieutenants' Office. I returned to my duties as the Administrative Lieutenant.

(ECF No. 13-2 at 8). In addition, Lt. Lampley explained in a Memorandum dated August 3, 2010, that:

> On July 18, 2010, inmate Greene was identified as the person that assaulted [O]fficer Kole [sic] in housing unit 5752. Officer Kole went on to say that he was 99% sure that he has the right inmate when question[ed]. However [O]fficer Kole did pick out three other[ ] inmates that fit the description of the inmate that did this minor assault. With fu[r]ther questioning of [O]fficer Kole he stated he can not be hundred percent sure that inmate Greene 32662-112 was the individual.

(ECF No. 13-2 at 10). Lt. Tucker also obtained a Memorandum from Officer Cole, who described the incident again and wrote in conclusion: "A lock down census was performed, at which time, it was discovered the inmate in question was GREEN[E], Germaine 32662-112." (ECF No. 13-2 at 9).

At the conclusion of his investigation, Lt. Tucker referred the Incident Report to the Unit Discipline Committee ("UDC") for an initial hearing. (ECF No. 13-2 at 6). On July 19, 2010, the UDC convened for an initial hearing. Greene stated that he was in the laundry room when the incident occurred and that he did not commit the charged misconducts. At the conclusion of the hearing, the UDC referred the Incident Report to the DHO for final disposition. The UDC recommended that if Greene was found to have violated the prohibited acts charged in the Incident Report, that he be sanctioned to loss of good conduct time ("GCT"), non-vested ("NV") GCT, and recommend disciplinary transfer. (ECF No. 13-2 at 5).

That same date, Greene was advised of his rights at the DHO Hearing. (ECF No. 13-2 at 12). He requested that Lt. Lampley and Lt. Blount appear at the hearing because they could testify that

Lt. Cole had told them that he was not 100 percent sure of the identity of the inmate who had assaulted him. He also requested that Counselor Byram serve as his staff representative at the hearing. (ECF No. 13-2 at 14).

Greene's hearing took place on or around August 11, 2010, before DHO A. Boyce.[4] The DHO advised Greene that Counselor Byram either declined or could not appear. Greene was given the option of postponing the hearing to obtain another staff representative, but he declined and waived his right to one. (ECF No. 13-2 at 18).

In his defense, Greene told the DHO:

> The whole time I was at the laundry room. When they did the census count in the room they pulled everyone out of the building. We all lined up. They told us pull our shirts out. I told the Lieutenant that I did not fight with anyone. I get to the Lieutenant's Office. Two weeks go by and the Captain said they think it is you. I have been having problems with the unit team. I did go into the bathroom to smoke but, I didn't use that bathroom. He grabbed a bunch of guys that look like me.

(Id.) Neither Lt. Lampley nor Lt. Blount appeared, and the DHO hearing report incorrectly stated that Greene did not request any witnesses. (Id.)

In addition to the Incident Report and Greene's statement, the DHO considered the following:

(1) Lt. Blount's July 26, 2010, Memorandum, Lt. Lampley's August 3, 2010, Memorandum, and Officer Cole's August 1, 2010, Memorandum, each of which have been discussed above;

(2) Memorandum from Captain J. Fitzgerald, dated July 18, 2010 (ECF No. 13-2 at 22), in which he explained that Officer Cole had stated to him that he was "pretty sure" that Greene was the inmate who had assaulted him;

(3) Memorandum from Lt. Lampley dated July 18, 2010 (ECF No. 13-2 at 23), in which he described the bed count and upper body checks that occurred after the incident, during which time Officer Cole "positively identified" Greene as the inmate who assaulted him;

---

[4] According to Greene, his hearing was continued to August 12, 2010, because DHO Boyce needed to get "more reports in regards of the responding officers." (ECF No. 15 at 2). He contends that Case Manager Kellyann Smith purposefully interfered with the DHO hearing (id.; see also ECF No. 5 at 4), but does not adequately explain what she allegedly did or what effect her alleged interference had on the outcome of his hearing.

5

    (4)    Memorandum dated July 18, 2010, submitted by D. Manfra, Correctional Officer (ECF No. 13-2 at 24), in which he explains that he escorted Greene to the Lieutenant's office;

    (5)    Memorandum dated July 18, 2010, submitted by Kellyann Smith, Case Manager (ECF No. 13-2 at 25), in which she explains that she had assisted staff with the upper body checks during which time Officer Cole identified Greene as the inmate who had assaulted him;

    (6)    Memorandum dated July 18, 2010, submitted by Correctional Officer G. Johnson (ECF No. 13-2 at 26), in which he explained that he secured the area after the assault on Officer Cole had occurred;

    (7)    Officer Cole's injury assessment form (ECF No. 13-2 at 27) and Health Services Clinical Encounter form (ECF No. 13-2 at 28).

(ECF No. 13-2 at 19).

At the conclusion of the hearing, DHO Boyce determined that Greene committed the prohibited acts as charged. He explained his decision as follows:

> I found you [Greene] have every reason to make this assertion [denying any involvement in the incident] in an effort to have the charge against you expunged. Essentially, you have everything to gain and nothing to lose in that effort however, I found the employee involved in this incident to be more credible than yourself as he has no vested interest in you, outcome of the report, and does have a legal obligation to be truthful.
>
> - - -
>
> Based upon [the] greater weight of evidence provided before me, your actions are consistent with a violation of Code 108-Possession of a hazardous tool [cell phone] and Code 224, assaulting another.

(ECF No. 13-2 at 20). DHO Boyce imposed the following sanctions for violating Code 108: (1) disallowance of 40 days GCT; (2) 30 days disciplinary segregation; (3) forfeiture of 100 days NVGCT; and (4) 18 months loss of telephone privileges for Code 108. The DHO imposed the following sanctions for violating Code 224: (1) disallowance of 27 days GCT; (2) 30 days DS; (3) 90 loss of commissary privileges; (4) 90 days loss of email (TRULINKS) privileges; and (5) 90 days loss of visiting privileges. (Id.)

6

Greene filed an administrative appeal. He alleged, *inter alia*, that the DHO failed to call the witnesses that he had requested. On October 20, 2010, the Regional Director granted Greene's appeal to the extent that the disciplinary action was being remanded for further review. The Regional Director set forth the reasons for the decision as follows:

> You state the DHO did not call your witnesses. You also state he erroneously found you guilty of assault and misinterpreted the Code 108. You request the restoration of good conduct time and privileges.
>
> A review of the disciplinary proceedings revealed some questions regarding the evidence relied upon to support the charge. Therefore, the disciplinary action is being remanded for further review. You will be advised of the time and date of further proceedings, if necessary. After you have received the amended DHO report, you may file a new Regional Administrative Appeal if you desire. Your appeal is partially granted.

(ECF No. 13-1 at 17).

On December 3, 2010, DHO Boyce issued an amended DHO report. He explained that although Greene had requested that Lt. Lampley and Lt. Blount be called as witnesses:

> [They] would have been adverse witnesses and therefore need not be called because their knowledge of the incident was adequately summarized in the investigative materials supplied to the DHO. The memorandum from the lieutenants was read to the inmate during the hearing and have been added to section five of this report. *The inmate then stated OK I won't need them then*.

(ECF No. 13-2 at 33 (emphasis added)).

On December 5, 2010, Greene filed and administrative appeal in which he challenged the amended DHO report. He asserted that there was insufficient evidence to support the DHO's findings, claimed that the DHO was not impartial, and alleged that Case Manager Kellyann Smith interfered with the hearing. He also once again challenged the BOP's classification of a cellular phone as a hazardous tool. (ECF No. 13-1 at 9-10).

On January 7, 2011, the Regional Director denied Greene's appeal. It was explained that under BOP Program Statement 5270.08, the decision of the DHO must be based on at least some facts, and if

7

there was conflicting evidence, the decision of the DHO must be based upon the greater weight of the evidence. It was noted that Officer Cole struggled with the inmate in question for about three minutes before the inmate ran away. Thus, Officer Cole's identification of Greene was reliable. It was also noted that Greene was present in the unit at the time of the incident and that he admitted to going into the bathroom to smoke. The Response indicated that Greene was identified during a census count and that Officer Cole stated that he was 99% sure that Greene was the inmate he observed on the cell phone and during the assault. Greene was advised that the DHO reasonably determined that he committed the prohibited acts as charged, based upon all of the available evidence. (ECF No. 13-1 at 11-12).[5]

Thereafter, Greene commenced the proceeding in this Court by filing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 5). Respondent, Warden Archie Longley, has filed his Answer (ECF No. 13), to which Greene has filed a Traverse (ECF No. 15). The issues in this case have been fully briefed and it is now ripe for review.

B.     **Subject Matter Jurisdiction**

A challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255. In contrast, a claim concerning the execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). Because Greene is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

---

[5] According to Greene, he filed an appeal of the Regional Director's response to the BOP's Central Office, but has not yet received a response. He asserts that the time period in which the Central Office is to respond to him has expired and thus his administrative remedies are concluded. (ECF No. 5 at 9). Because Respondent does not contest that assertion, the Court will not address issues of exhaustion of administrative remedies.

**C.      Discussion**

    **1.      Greene Was Not Deprived Of Due Process**

Greene asserts that FCI Fort Dix personnel have violated his due process rights. This Court's analysis of this claim begins with the United States Supreme Court's decision in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. <u>Wolff</u>, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. <u>Id.</u> Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (<u>i.e.</u>, good time credit) "is not arbitrarily abrogated." <u>Id.</u> at 557.

In <u>Wolff</u>, the Supreme Court enumerated the following five procedural safeguards that are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rationale behind the disciplinary action. <u>Id.</u> at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in <u>Wolff</u>, and in some respects exceed the required process set forth in that case. <u>See</u> 28 C.F.R. §§ 541.10-22 (2010). Under the relevant agency

regulations in effect at the time period at issue here, when BOP staff consider informal resolution of an inmate violation of BOP rules and regulations to be inappropriate, an incident report must be prepared. Staff must investigate the incident promptly, unless circumstances beyond the control of the investigator intervene. Additionally, staff shall give each inmate charged with violating a BOP rule a written copy of the charge(s) against him or her at the beginning of the investigation and ordinarily within 24 hours of the time staff becoming aware of the inmate's involvement in the incident. 28 C.F.R. §§ 541.14-15 (2010).

Upon the completion of the investigation, the incident report may be referred to the UDC for an initial hearing. Ordinarily, the initial hearing shall be held within three work days from the time staff became aware of the inmate's involvement in the incident. However, the UDC may extend time limits set forth in the regulations for a good cause shown by the inmate or staff. 28 C.F.R. § 541.15 (2010).

After the hearing, the UDC may either reach a finding as to whether a prohibited act was committed or refer the case to the DHO for further hearing. The regulations provide an inmate with the following rights before the DHO: (1) no less than 24 hours advance written notice of the charges; (2) a full time staff member to represent him at the DHO hearing; (3) the opportunity to make a statement and to present documentary evidence and witnesses; (4) the right to be present through the DHO hearing; (5) the right to have the DHO consider all evidence presented at the DHO hearing; and (6) the right to a written report of the DHO's findings, the DHO's decision, and the specific evidence relieved upon by the DHO. 28 C.F.R. § 541.15, .17 (2010).

Greene has failed to establish that he was denied any process due to him under the Due Process Clause or under applicable BOP regulations. Although he requested that Lt. Blount and Lt. Lampley testify that Officer Cole was not sure if he was the inmate who assaulted him, DHO Boyce denied the requested witnesses after determining both witnesses to be adverse to Greene's defense and because they

each had provided written statements fully documenting their recollection of the incident. His decision was in accordance with 28 C.F.R. § 541.17(c) (2010), which provides that the DHO need not call adverse witnesses if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO. Moreover, by reading their written statements to Greene during the hearing, and considering Lt. Lampley's and Lt. Blount's memoranda, the testimony sought by Greene was incorporated into the record and considered by DHO Boyce.

Greene's challenge to the impartiality of the DHO also lacks merit. BOP regulations provide the following:

> (b) In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member or a witness to the incident or play any significant part in having the charge(s) referred to the DHO.

28 C.F.R. § 541.16(b) (2010).

In this case, DHO Boyce was not the reporting officer, investigating officer, a member of the UDC, a witness to the incident, nor did he play any significant part in having the charge(s) referred to the DHO. Moreover, Greene offers no evidence to support his assertion that the DHO was not impartial. As Respondent asserts, the mere fact that DHO Boyce denied Greene two adverse witnesses is not evidence that he lacked impartiality.

### 2. The DHO's Determination Was Supported By the Requisite Degree of Evidence

Greene also challenges the DHO's finding that he committed the prohibited acts at issue. It is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner's due process challenges to prison disciplinary proceedings). Once the

reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

Reviewing the evidence as recited above, the Court finds that there was "some evidence" to support DHO Boyce's decision. DHO Boyce relied on and credited, *inter alia*, the Incident Report and the staff member memoranda discussed above, which included evidence that Officer Cole was 99% sure that the inmate whom he observed in the bathroom was Greene. He determined that the greater weight of the evidence supported the finding that Greene committed the prohibited acts. He also specifically stated that he did not credit Greene's denial that he was not involved in the incident, and this Court has no authority to review that assessment. Hill, 472 U.S. at 455-56.

### 3. The BOP's Classification of Cell Phones As Hazardous Tools

Greene also challenges the BOP's decision to classify cell phones as "hazardous tools," thereby making the possession of them fall within the ambit of the version of Code 108 in effect at the time in question here. Other federal prisoners have made the same challenge to the BOP's decision, and their requests for habeas relief have been consistently rejected by federal habeas courts because it is well-settled that "[a]n agency's interpretation of its own regulations is 'controlling … unless it is plainly erroneous or inconsistent with the regulation.'" Chong v. Dist. Dir. INS, 264 F.3d 378, 389 (3d Cir. 2001), quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). For example, in a similar case recently decided by the United States Court of Appeals for the Third Circuit, it was held that "the absence of the term 'cell phone' in the text of [the prior version of] Code 108 did not prevent the BOP from interpreting that provision to include this item." Hicks v. Yost, 377 F.App'x 223, 224-25

(3d Cir. 2010).  The Third Circuit Court further held that the BOP's interpretation of Code 108 is not plainly erroneous or inconsistent with that provision and therefore cannot be disturbed by a federal court sitting in habeas.  Id., citing Chong, 264 F.3d at 389.  See, e.g., McGill v. Martinez, 348 F.App'x 718, 721 (3d Cir. 2009) (rejecting the petitioner's argument that Code 108 does not prohibit possession of a cell phone and that the warden's interpretation thus constituted a "revision" of Code 108 that required a formal amendment; holding "the warden interpreted Code 108 to include possession of a cell phone because he determined that such possession 'poses a serious impact on the institution security.'  That interpretation is perfectly consistent with Code 108's prohibition of items 'hazardous to institutional security.'"); Robinson v. Warden, 250 F.App'x 462, 464 (3d Cir. 2007) ("We also reject … the argument … that a cell phone is not a hazardous tool [under Code 108]…. The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations[.]").

      Greene also argues that the BOP's rule that includes cell phones as a "hazardous tool" as set forth in the prior version of Code 108 of its disciplinary regulations is invalid because it was not promulgated in accordance with the Administrative Procedure Act's ("APA's") notice-and-comment procedures, set forth at 5 U.S.C. § 553.  The APA provides that an agency may not adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule") without providing prior notice and comment through publication in the Federal Register.  5 U.S.C. § 553(b), (c).  It defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]"  Id. § 551(4).  Rules that are issued in violation of the APA are invalid.

      On the other hand, "interpretive" rules seek only to interpret language already in properly issued regulations.  If the agency is not adding or amending language to the regulation, the rules are interpretive.  Interpretive, or "procedural," rules do not themselves shift the rights or interests of the

13

parties, although they may change the way in which parties present themselves to the agency. Interpretive or procedural rules and statements of policy are exempted from the notice-and-comment requirement. Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003) (citations omitted); Dia Navigation Company v. Pomeroy, 34 F.3d 1255, 1264 (3d Cir. 1994).

Pursuant to relevant statutes and the notice-and-comment procedures of the APA, the BOP has promulgated disciplinary regulations applicable to federal prisoners incarcerated in BOP institutions. 28 C.F.R. § 541.10 (2010), *et seq*. Section 541.13 (2010) (Prohibited Acts and Disciplinary Severity Scale), identifies certain prohibited acts (including Code 108), assigns to each prohibited act a severity category, and sets forth the sanctions which my or shall be imposed for each type of violation. See 28 C.F.R. §.13, Tables 3 and 4 (2010).

Greene appears to be arguing that the BOP's internal rule to include cell phones as a "hazardous tool" under the prior version of Code 108 violated the APA because it was not promulgated in accordance with that statute's notice-and-comment procedures. His argument lacks merit. Under the regulation in effect at the time at issue here, Code 108 included all tools likely to be used in an escape or escape attempt, and a cell phone falls within that definition. Therefore, the inclusion of cell phones as "hazardous tools" under Code 108 was an interpretative rule and not subject to the notice-and-comment requirement of the APA.

In conclusion, prison officials do not need to detail every possible way security can be breached or give advance notice at all of the conduct that is sanctioned. A reasonable person can consider a cell phone in the hands of an inmate to be a hazardous tool. That is all FCI Fort Dix personnel needed to discipline Greene because the general standard for reviewing prisoners' constitutional claims is whether the prison regulation is reasonably related to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89 (1987).

    **4.    The Application of Code 108 To Inmates Who Are Found In Possession Of Cell Phones Does Not Violate the Equal Protection Clause**

Greene contends that the BOP treated him differently than other similarly situated inmates and that this is a violation of the Equal Protection Clause. He contends that prison officials choose between inmates found in possession of cellular telephones and randomly charge those inmates with different code violations ranging from Code 305 (Possession of Anything Not Authorized) to Code 108 (Introduction/Possession of a Hazardous Tool) to Code 199 (Conduct Which Disrupts the Security or Orderly Running of the Institution).

The Equal Protection Clause requires that all people similarly situated be treated alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Whitus v. Georgia, 385 U.S. 545, 550 (1967). "Thus, to prevail under the Equal Protection Clause, [Greene] must prove that the decisionmakers in his case acted with discriminatory purpose." Id. at 292.

Greene cites various cases in which inmates received less severe punishment for the same violation committed by him. However, the record does not support his claim that his disciplinary sanction was the result of purposeful discrimination. Accordingly, his equal protection claim fails. See Millard v. Hufford, 415 F.App'x 348, 350 (3d Cir. 2011) ("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination .... Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim."), citing

15

McCleskey, 481 U.S. at 292 (explaining that purposeful discrimination means "that the decisionmakers in [the claimant's] case acted with discriminatory purpose."). Accordingly, Greene's equal protection claim lacks merit.

**II.**

For the forgoing reasons, the petition for a writ of habeas corpus is denied. An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  September 27, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GERMAINE GREENE,** )<br>      Greene, )<br>)<br>v. )<br>)<br>**ARCHIE LONGLEY,** )<br>      Respondent. ) | Civil Action No. 11-109 Erie<br><br>Magistrate Judge Susan Paradise Baxter |

## ORDER

AND NOW, this 27th day of September, 2011;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. It is further ORDERED that his oral motion for a speedy resolution is DISMISSED AS MOOT. The Clerk of Courts is directed to close this case.

                              /s/ Susan Paradise Baxter
                              SUSAN PARADISE BAXTER
                              United States Magistrate Judge